IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


GREGORY SMITH,          )
                              )
    Plaintiff,      )
                              )  CIVIL ACTION NO.
    v.                )    2:04cv1063-T
                              )       (WO)
BOYD BROS. TRANSPORTATION,  )
INC.,                 )
                              )
    Defendant.      )


OPINION

Plaintiff Gregory Smith brought this lawsuit against defendant Boyd Bros. Transportation, Inc. (BBT) asserting violations of the Family Medical Leave Act of 1993 (FLMA), 29 U.S.C.A. §§ 2601-2654, and state-law claims of defamation, intentional interference with employment opportunities, and negligent-and-wanton training and supervision.[1]   Jurisdiction is proper under 29 U.S.C.A.

_____

    1.   Smith's false-light claim and his claims relating to Heartland Express were dismissed earlier. Doc. No. 31.

§ 2617(a)(2) (FMLA), 28 U.S.C.A. § 1331 (federal question), and § 1367 (state-law claims).

This case is currently before the court on BBT's motion for summary judgment.  The motion will be denied as to the federal claims and granted as to the state-law claims.

## I. SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Fitzpatrick v. City of Atlanta,

2

2 F.3d 1112, 1115-17 (11th Cir. 1993) (discussing burden-shifting under Rule 56).  The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings.  Fed. R. Civ. P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## II. FACTUAL BACKGROUND

What follows is Smith's version of the facts chronologically:

<u>September 18, 2000</u>:  BBT hired Smith as a commercial truck driver.

<u>October 3, 2002</u>: Smith experienced congestive heart failure while delivering a load and was subsequently hospitalized.[2]

<u>October 4</u>:  After notifying BBT of his need to take some time off work due to his medical condition, Smith was placed on inactive status in the company computer system.

<u>October 14</u>:  Smith's status was changed to a 30-day medical leave.

<u>October 15</u>:  Smith communicated to BBT that he would be off work for three to four weeks.

<u>October 16</u>:  BBT approved Smith's request for leave under the FMLA dating it back to October 4,[3] and the notation, "sent FLMA papers," was entered on the company

---

2.   Plaintiff's brief in opposition to defendant's motion for summary judgment (Doc. No. 20),  Exhibit A, Deposition of Gregory Smith, pp. 72-77.

3.   <u>Id</u>., Exhibit A, Attachment 4, FLMA approval papers.

computer for Smith.[4]   Smith's FMLA leave, which could be up to 12 weeks, 29 U.S.C.A. § 2612(a)(1), replaced his 30-day company medical leave.

October 23 and 29:  Smith notified BBT that he had a doctor's appointment scheduled for November 6 and would return to work as soon as he was released by his doctor.

November 12:  John Bartram, the BBT employee responsible for creating and implementing the company's inactive driver policy, entered a notation in the computer system that Smith had failed to report or communicate while on 30-day medical leave starting October 4.  Bartram terminated him effective November 13.

November 15:  Smith underwent a heart catherization.[5] BBT informed DAC Services, an independent employment

_____

4.   Id., Exhibit B, Attachment 5 computer screen.

5.   Id., Exhibit A, Deposition of Gregory Smith, p. 167.

history company for commercial drivers, that Smith "resigned/quit" and was a "no show."[6]

<u>November 21</u>:   Smith was released to return to work beginning November 25 without any restrictions. He contacted BBT to discuss his return and was informed that he had been terminated.[7]   He also received a COBRA notification form which indicated that he had been terminated.

<u>November 25</u>:   Smith contacted Bartram to find out why he was terminated.   Bartram explained that he had made several unsuccessful attempts to contact Smith during his leave.[8]

<u>December 1</u>:   Smith applied for unemployment compensation benefits.

<u>December 3</u>:   BBT placed Smith back on family medical leave in the computer system.   Smith was never told, nor

---

6.   <u>Id</u>., Exhibit D, DAC paperwork.

7.   <u>Id</u>., Exhibit A, Deposition of Gregory Smith, p. 180.

8.   <u>Id</u>. at pp. 196-7.

did he receive any written documentation, of his reinstatement.[9]   Smith called Buddy Moore Trucking to inquire about a job.   Buddy Moore Trucking sent BBT an employment-verification form.   BBT responded indicating that Smith was still employed with it on family medical leave.[10]

December 4:  Buddy Moore Trucking hired Smith after he explained that BBT had actually terminated him while he was on leave.

December 9:   Smith started work at Buddy Moore Trucking.   BBT represented to the UCAC, a third party preparer of BBT's initial responses to unemployment-compensation claims, that Smith was still employed and on family medical leave.

December 19:  BBT made the same statement--that Smith was still employed and on family medical leave--to the

_____

9.  Id. at p. 232.

10.  Id., Exhibit B, Attachment 11, verification form.

Alabama Department of Industrial Relations, the agency handling unemployment claims.[11]

December 23: BBT terminated Smith for violating company policy by accepting other employment while on family medical leave.

December 30: BBT again informed DAC services that Smith "resigned/quit" and was a "no show."

January 2003: Smith's claim for unemployment benefits was denied.


III. DISCUSSION

A. Federal Claims

The FLMA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period ... [b]ecause of a serious health condition that makes the employee unable to perform the functions" of his position, 29 U.S.C.A. § 2612(a)(1); it also grants eligible employees the right after leave "to

---

11. Defense stipulation (Doc. No. 33).

be restored by the employer to the position of employment held by the employee when the leave commenced" or to an equivalent position.  § 2614 (a)(1).

To protect these rights, the FMLA creates two types of claims: <u>interference claims</u>, in which employees assert that their employer denied or otherwise interfered with their substantive rights under the statute, 29 U.S.C. § 2615(a)(1); and <u>retaliation claims</u>, in which employees assert that their employer discriminated or retaliated against them because they had engaged in activity protected by the statute, § 2615(a)(2).  <u>Strickland v. Water Works & Sewer Bd.</u>, 239 F.3d 1199, 1206 (11th Cir. 2001).  Smith asserts both claims.

## 1. Interference Claim

To prevail on his interference claim, Smith must establish that he was entitled to a right under the FMLA and that BBT interfered with or denied that right. <u>O'Connor v. PCA Family Health Plan, Inc.</u>, 200 F.3d 1349,

9

1353-54 (11th Cir. 2000).  It is undisputed that Smith was terminated while on FMLA medical leave.  Therefore, BBT interfered with Smith's FMLA right to take family medical leave and after that to be restored to the same or an equivalent employment.  BBT's is, therefore, not entitled to summary judgment on Smith's interference claim.


## 2. Retaliation Claim

To establish a retaliation claim, Smith has the additional burden of demonstrating that BBT intentionally discriminated or retaliated against him, in the form of an adverse-employment action, for exercising an FLMA right. Strickland, 239 F.3d at 1207.  Put another way, Smith must show that BBT's decision to terminate him was motivated by "impermissible retaliatory or discriminatory animus." Id.

The burden-shifting set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies to Smith's retaliation claim.  Brungart v. BellSouth Telecomm. Inc., 231 F.3d 791, 798 (11th Cir. 2000).  Under this framework,

10

Smith has the initial burden of establishing a prima-facie case of unlawful discrimination by a preponderance of the evidence.   McDonnell Douglas, 411 U.S. at 802. "Demonstrating a prima facie case is not onerous." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). To do so Smith must demonstrate that: (1) he was engaged in statutorily protected activity; (2) he suffered an adverse-employment action; and (3) there is a causal connection between the protected conduct and the adverse employment action.  Parris v. Miami Herald Publ'g Co., 216 F.3d 1298, 1301 (11th Cir. 2000).

    The first two elements of the prima-facie case are undisputed.  To satisfy the causal connection requirement for the third prong, Smith need only demonstrate "that the protected activity and the adverse action are not wholly unrelated."  Simmons v. Camden County Bd. of Educ., 757 F.2d 1187, 1189 (11th Cir. 1985).  Generally, temporal proximity between the adverse employment action and the protected conduct is sufficient to raise an inference of

causation.  _Bechtel Constr. Co. v. Sec'y of Labor_, 50 F.3d 926, 934 (11th Cir. 1995); _see also_ _Johnson v. Auburn University_, ___ F.Supp.2d ___, ___, 2005 WL 3088331 (M.D. Ala. 2005) (Thompson, J.) ("The shorter the period between the two events, the stronger the inference that the adverse action was improperly motivated; conversely, a long period of time between the protected conduct and adverse-employment action will negate an inference that the adverse action was caused by the protected expression.").

However, to show a relationship between the adverse action and the protected conduct, Smith must at least demonstrate that the decisionmaker, Bartram, was aware of the protected conduct in question.  _Brungart_, 231 F.3d at 799.   Smith can establish awareness based on circumstantial evidence. _Goldmsith v. City of Atmore_, 996 F.2d 1155, 1163 (11th Cir. 1993).

BBT argues that Smith cannot establish the causal connection, notwithstanding the temporal proximity between

his taking of FLMA leave and his termination, because
Bartram did not know that Smith was on FLMA leave when he
terminated him; instead, according to BBT, Bartram
mistakenly believed that Smith was on an expired 30-day
company medical leave.[12]

For summary-judgment issues "on which the non-movant
would bear the burden of proof at trial, the moving party
is not required to support its motion with affidavits or
other similar material negating the opponent's claim."
Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-1116
(11th Cir. 1993) (citations and internal quotation marks
omitted).  "Instead, the moving party simply may show[]--
that is, point[] out to the district court--that there is
an absence of evidence to support the non-moving party's
case.  Alternatively, the moving party may support its
motion for summary judgment with affirmative evidence

_____

        12. Bartram also indicated that Smith had failed to
report or communicate during leave, but  BBT admits that
Smith  was  in  contact  during  the  30-day  period.
Plaintiff's brief in opposition to defendant's motion for
summary judgment (Doc. No. 20), Exhibit B, Deposition of
Jeffrey Hopkins, p. 109.

demonstrating that the non-moving party will be unable to prove its case at trial." Id.

Where the movant has attempted to demonstrate an absence of evidence on the issue, "the non-movant must respond in one of two ways[:]  ... show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, [or] ... come forward with additional evidence sufficient to withstand a directed verdict motion at trial." Id. at 1116-1117.  Where the movant has put on evidence affirmatively negating a material fact), "then the non-movant must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Id.

Therefore, because Smith has the burden of establishing a prima-facie case, BBT can base its summary-judgment motion on the absence of evidence showing Bartram's knowledge of Smith's FMLA leave.  Smith can, in turn, defeat summary judgment by pointing to evidence in

14

the record supporting the conclusion that Bartram had knowledge of his FMLA leave.  Id. at 1116.  Smith points to the fact that when Bartram entered his termination in the computer there was a prior entry a few lines above Bartram's notation indicating that Smith had been "sent FLMA papers."  Construing these facts in the light most favorable to Smith as the non-moving party, the court concludes that Smith has shown a genuine factual issue regarding Bartram's knowledge that he was on FMLA leave. Bartram's knowledge coupled with the temporal proximity between Smith's leave and his termination satisfies Smith's prima-facie case.

Because Smith has established a prima-facie case, raising a presumption of illegal discrimination, Burdine, 450 U.S. at 254; Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc), BBT must rebut the presumption by articulating a legitimate, nondiscriminatory reason for its employment action. Holifield, 115 F.3d at 1564.  BBT has to produce a reason;

it does not have to persuade the court that it was
actually motivated by the reason advanced. <u>Burdine</u>, 450
U.S. at 254, 258.  BBT's proffered reason, that it simply
made a mistake, meets this "exceedingly light"
requirement.  <u>Turnes v. AmSouth Bank, N.A.</u>, 36 F.3d 1057,
1061 (11th Cir. 1994).

BBT having satisfied its burden of production, "the
presumption of discrimination is eliminated and '[Smith
now has] the opportunity to come forward with evidence,
including the previously produced evidence establishing
the prima facie case, sufficient to permit a reasonable
fact finder to conclude that the reason[] given by [BBT]
w[as] not the real reason[] for the adverse employment
decision.'"  <u>Chapman</u>, 229 F.3d at 1024 (internal citations
omitted).  Smith can show that BBT's reason is pretextual
"by producing sufficient evidence to allow a reasonable
finder of fact to conclude that [BBT']s articulated
reason[] for its decision [is] not believable."  <u>Howard v.
BP Oil Co.</u>, 32 F.3d 520, 526 (11th Cir. 1994).  Smith can

16

do so by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [BBT]'s proffered legitimate reason[] for its action that a reasonable factfinder could find [it] unworthy of credence." Combs v. Plantation Patterns, 106 Fd 1519, 1538 (11th Cir. 1997) (internal quotations and citations omitted). Bartram's notation (to terminate Smith for expired 30-day company medical leave) on the same computer screen (with the notation that Smith had been "sent FMLA papers") could lead a reasonable factfinder to conclude that Bartram's lack of knowledge of Smith's FMLA status is not believable. There is a genuine issue of material fact as to whether Bartram's proffered reason for terminating Smith was pretextual, and, as such, summary judgment is inappropriate on Smith's retaliation claim.

17

## B. State-Law Claims

### 1. Defamation

Smith asserts that BBT's communications to the following entities were defamatory: (a) its employees; (b) the Alabama Department of Industrial Relations; (c) the UCAC (the company preparing BBT's initial responses to unemployment claims); (d) Buddy Moore Trucking; and (e) DAC Services (an independent employment history company for commercial drivers).  To establish defamation under Alabama State law, Smith must show that BBT was at least negligent in publishing a false and defamatory statement about him to another.  <u>Gary v. Crouch</u>, 867 So.2d 310, 315 (Ala. 2003).  The court will analyze each communication in turn.

<u>BBT Employees</u>:  Smith asserts that he was defamed by the distribution of a termination report to BBT department heads stating that he was fired for not calling in during leave.  This claim fails as a matter of law, even if false and defamatory, because there is no evidence establishing

18

that the report was seen by anyone other than corporate department heads or employees whose duties include handling such reports.  This court has previously found that this type of internal distribution is insufficient to meet the publication requirement for defamation.  <u>Birks v. Jack Ingram Motors, Inc.</u>, 346 F. Supp. 2d 1216, 1225 (M.D. Ala. 2004) (Thompson, J.); <u>see also</u> <u>K-mart Corp., Inc. v. Pendergrass</u>, 494 So.2d 600, 603 (Ala. 1986).  Therefore, BBT is entitled to summary judgment on this claim.

<u>Alabama Department of Industrial Relations</u>:  BBT's representations to the Alabama Department of Industrial Relations, that Smith was employed and on family medical leave, are privileged under 1975 Ala. Code § 25-4-116. This provision states in pertinent part that:

> "All letters, reports, communications and other matters, written or oral, from employer or employee to each other or to the director or any of his agents, representatives or employees, or to any official or board functioning under this chapter, which shall have been written, sent, delivered or made in connection with the requirements and administration of this chapter, shall be absolutely

19

> privileged and shall not be made the
> subject matter or basis for any civil
> action for slander or libel in any
> court."

1975 Ala. Code § 25-4-116.  While the Alabama courts have
expressed some uncertainty as to whether this privilege is
qualified or absolute, <u>see e.g.</u>, <u>Cantrell v. North River
Homes</u>, 628 So.2d 551, 554 (Ala. 1993), this court finds
that the code's plain language provides BBT with an
absolute privilege from liability for slander or libel.
<u>Johnson v. Fed. Express Corp.</u>, 147 F.Supp. 2d 1268, 1277
(M.D. Ala. 2001) (DeMent, J.); <u>Watters v. Louisiana
Pacific Corp.</u>, 2005 WL 3150516 (11th Cir. 2005)
(unpublished).

Furthermore, even if the statutory privilege was not
absolute, Smith has not made the critical showing, as will
be explained later, that these statements were even
defamatory.

<u>UCAC & Buddy Moore Trucking</u>:  Smith's defamatory
claims based on BBT's representations to UCAC and Buddy

20

Moore Trucking--that Smith was still employed and on family medical leave--are meritless because, as stated above, there is nothing in the record to indicate that the statements were even defamatory. Defamatory statements are defined as those tending "to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." <u>Harris v. School Annual Publishing Co.</u>, 466 So. 2d 963, 964 (Ala. 1985) (quoting Restatement (Second) of Torts § 559 (1976)). To the extent that Smith is arguing that the statements could create an inference that he was seeking undeserved unemployment benefits, the operative words in no way state that Smith acted at all inappropriately in filing his claim. Additionally, accepting Smith's argument, that these statements make him appear unreliable to prospective employers, would lead to the anomalous result that only the unemployed would be desirable employees and associates. In sum, simply stating that Smith was employed and on leave is not

21

defamatory because this language is not reasonably capable of diminishing his reputation.

DAC Services:  Assuming that a jury could infer that BBT's statements to DAC Services (that Smith "resigned/quit" and was a "no show") would tend to harm Smith's reputation, a qualified privilege exists for the statements.  As the Alabama Supreme Court has explained,

> "Where a party makes a communication, and such communication is prompted by duty owed either to the public or to a third party, or the communication is one in which the party has an interest, and it is made to another having a corresponding interest. ... The duty under which the party is privileged to make the communication need not be one having the force of legal obligation, but it is sufficient if it is social or moral in its nature and defendant in good faith believes he is acting in pursuance thereof, although in fact he is mistaken."

Willis v. Demopolis Nursing Home, Inc., 336 So.2d 1117, 1120 (Ala. 1976) (internal citations omitted).

To defeat this qualified privilege, BBT argues that Smith must show malice by evidence of previous ill-will,

22

hostility, threats, rivalry, or violent language, or evidence of a mode and extent of publication that demonstrates malice.  Smith responds that he can instead show malice by establishing that the representations were made with knowledge that they were false or with reckless disregard as to whether they were false.  While there was a period of uncertainty about which articulation was correct, the Alabama Supreme Court recently clarified that either malice formulation may be employed to defeat a qualified privilege. <u>Wiggins v. Mallard</u>, 905 So.2d 776, 788 (Ala. 2004).

BBT has met its initial summary-judgment burden by pointing out that there is an absence of evidence demonstrating that the two employees (neither of whom was Bartram) responsible for completing the DAC Services reports acted with malice. <u>See</u> <u>Fitzpatrick</u>, 2 F.3d at 1115-16 ("For issues ... on which the non-movant would bear the burden of proof at trial, ... the moving party simply may show[]--that is, point[] out to the district

court--that there is an absence of evidence to support the non-moving party's case.") (citations and quotation marks omitted).  Smith argues that he can demonstrate the second type of malice because he has presented significant evidence hotly disputing the accuracy of the statements that he quit or did not show up for work.  However, inaccuracy alone does not establish malice; otherwise, this would conflate the prima-facie requirement that statements be false with the malice requirement that the speaker knowingly or recklessly disregard their falseness.

In contrast to Smith's FLMA claim, he cannot survive summary judgment here because he has not come forward with any evidence showing that the pertinent employees responsible for completing the DAC Services reports acted with malice or that they acted at the direction of someone harboring malice; indeed, Smith has not pointed to evidence suggesting that these employees even knew the reports were false.[13]  See Fitzpatrick, 2 F.3d at 1116-1117

_____

13. In their briefs, both BBI and Smith refer to events and circumstances for which there is no support in (continued...)

(where the movant demonstrated an absence of evidence on the critical issue, "the non-movant must respond in one of two ways[:]  ... show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion ..., [or] ... come forward with additional evidence sufficient to withstand a directed verdict motion at trial"). BBT retains its privilege precluding it from liability for defamation.

### 2. Intentional Interference
### With Employment Opportunity

To succeed on his intentional-interference-with-employment-opportunity claim, Smith must establish the following factors: (1) the existence of a contract or business relation; (2) BBT's knowledge of the contract or business relation; (3) intentional interference by BBT with the contract or business relation; (4) absence of justification for the interference; and (5) damage as a

---

13. (...continued)
the evidentiary record.  Because briefs are not evidence, the court has not relied on these unsupported statements in the briefs.

result of the interference.  <u>Gross v. Lowder Realty Better
Homes & Gardens</u>, 494 So.2d 590, 597 (Ala. 1986).

Notably, interfering with prospective employment
opportunities can trigger liability despite the lack of an
existing contract or business relation.  <u>Byars v. Baptist
Med. Ctr., Inc.</u>, 361 So.2d 350, 353 (Ala. 1978).  However,
Smith's claim fails because he cannot show that BBT
interfered with his employment opportunity at Buddy Moore
Trucking when it chose to hire him notwithstanding the
information BBT provided the day after Smith called about
the job.  This court is mindful that when this cause of
action was extended to prospective employment, it was
based on the reasoning that the interference would prevent
the plaintiff from securing employment or deprive him or
her of earning a livelihood. <u>Byars</u>, 361 So.2d at 353.  A
plaintiff's intentional-interference-with-employment-
opportunity claim does not lie when the plaintiff, in
fact, obtains in full, and without hindrance, the
employment opportunity sought.  Because Smith obtained the

employment he sought, Byars is factually and logically distinguishable, and BBT is entitled to summary judgment on this claim.

### 3. Improper Training and Supervision

Under Alabama law, the finding of underlying tortious conduct is a precondition to invoking successfully liability for the negligent or wanton training and supervision of an employee. Stevenson v. Precision Standard, Inc., 762 So.2d 820, 824 (Ala. 1999) (citing Big B, Inc. v. Cottingham, 634 So.2d 999 (Ala. 1993)). Because this court has already determined that the defamation and intentional-interference-with-employment opportunity claims fail as a matter of law, there is no underlying tortious conduct capable of creating liability for Smith's negligent or wanton training-and-supervision claim. Consequently, summary judgment is due on this claim.

27

An appropriate judgment will be entered denying summary judgment on Smith's federal claims and granting summary judgment in favor of BBT on Smith's state-law claims.

DONE, this the 23rd day of December, 2005.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE